UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

PAPA BANGURA; FATMATA BANGURA;
BAI-MAKA BANGURA,
Petitioners,

v.                                                             No. 96-2805

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A70-567-342, A70-633-937, A70-633-938)

Submitted: June 24, 1997

Decided: July 28, 1997

Before HAMILTON and MICHAEL, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Petition denied by unpublished per curiam opinion.

_____

**COUNSEL**

Randall L. Johnson, Arlington, Virginia, for Petitioners. Frank W.
Hunger, Assistant Attorney General, Richard M. Evans, Assistant
Director, M. Jocelyn Lopez Wright, Office of Immigration Litigation,
Civil Division, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Papa Bangura, his wife, Fatmata Bangura, and their son, Bai-Maka Bangura, petition for review of a final order of the Board of Immigration Appeals (Board) denying their application for asylum and withholding of deportation.[1] Because substantial evidence supports the Board's decision, we deny the petition.

I

The Immigration and Nationality Act (Act) authorizes the Attorney General, in her discretion, to confer asylum on any refugee. 8 U.S.C. § 1158(a) (1994). The Act defines a refugee as a person unwilling or unable to return to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (1994); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (in banc).

The "well-founded fear of persecution" standard contains both a subjective and an objective component. An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testimony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992); see Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992).

_____

[1] Mr. Bangura applied for asylum; Mrs. Bangura and Bai-Maka were automatically included in the application pursuant to 8 U.S.C. § 1158(b)(3) (1994).

2

The standard for withholding of deportation is more stringent than that for granting asylum. INS v. Cardoza-Fonseca , 480 U.S. 421, 431-32 (1987). To qualify for withholding of deportation, an applicant must demonstrate a "clear probability of persecution." Id. at 430.

We must uphold the Board's determination that the Banguras are not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994). We accord the Board all possible deference. Huaman-Cornelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by [the Banguras] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." See INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

II

The Banguras, natives and citizens of Sierra Leone, entered the United States separately as nonimmigrant visitors in the spring of 1992. Evidence presented at the hearing established that Mr. Bangura, the principal applicant, was a superintendent at the Port of Freetown from 1989 to 1991, a position appointed by the All People's Congress (APC) government. As a superintendent, Mr. Bangura was well-paid and was provided a free house, car, and hefty commissions from the landing fees charged to ships landing in the port.

In April 1992, when the Banguras were in the United States, Captain Valentine Strasser led a successful military coup against the APC government. After the coup, members of Strasser's military came to Mr. Bangura's parents' house looking for Mr. Bangura's father, who had been an APC campaign chairman for twenty years. Because his father was not home, the military men questioned Mr. Bangura's mother about his father's whereabouts, threatening to kill her and beating her.

Mr. Bangura also testified that his cousin, a senior military officer for Strasser, was arrested, detained, and executed after the coup because he refused Strasser's offer to lead the coup. Mr. Bangura's uncle, a former minister of information and broadcasting for the APC government and a member of the APC, was arrested, detained, and

3

interrogated by the Strasser military. In addition, Mr. Bangura's brother was shot by the Strasser military in November 1992. Finally, his wife's parents and others were ambushed and killed by Strasser's soldiers.

Mr. Bangura maintained at the hearing that the Strasser government is still looking for him. Mr. Bangura submitted a letter from a cousin referring to Mr. Bangura's embezzlement of millions from the port, and Mr. Bangura explained that he may be suspected of corruption due to the many benefits he received in his appointed position under the APC government. Three of Mr. Bangura's former colleagues from the port were arrested and briefly imprisoned after the coup.

The Banguras take issue with the finding of the IJ, affirmed by the Board, that Mr. Bangura failed to demonstrate a well-founded fear of persecution based on his political opinion and his relationship to various family members who have been killed or imprisoned.

Upon our review of the record, we conclude that substantial evidence supports the Board's finding that Mr. Bangura does not have a well-founded fear of persecution. The record supports the IJ's conclusion that Mr. Bangura's fear of return is based on the possibility of investigation for corrupt practices rather than because of his political affiliation with the former government. Liability to criminal prosecution alone does not constitute persecution. See Matter of Nagy, 11 I&N Dec. 888 (BIA 1966). Moreover, while numerous members of the Banguras' family have been killed, threatened, or imprisoned by the Strasser regime, there is no evidence to suggest that the family has been specifically targeted or that the Strasser government is aware that Mr. Bangura is related to those individuals. See Prasad v. INS, 47 F.3d 336, 340 (9th Cir. 1995). Rather, it appears that the Banguras' relatives were victims of general conditions of violence and upheaval in Sierra Leone, which do not qualify an alien for asylum or withholding of deportation. See Matter of Mogharrabi, 19 I&N Dec. 439, 447 (BIA 1987).

As Mr. Bangura has not established entitlement to asylum, he cannot meet the higher standard for withholding of deportation. Further, because the claims of Mrs. Bangura and Bai-Maka are dependent on

4

the claims of Mr. Bangura, their claims fail as well. We accordingly deny the petition for review. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

PETITION DENIED